UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDRES GOMEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>TRINITAS CELLARS, LLC,<br><br>    Defendant. | Case No. 3:21-cv-09006-WHO<br><br>**ORDER ON MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 23 |

Plaintiff Andres Gomez is visually impaired and alleges that the website of a winery owned by defendant Trinitas Cellars, LLC ("Trinitas"), is inaccessible to him in violation of the Americans with Disabilities Act ("ADA") and California's Unruh Civil Rights Act. Trinitas moved to dismiss and submitted evidence outside of the pleadings that, it argued, showed the website was ADA-compliant and that Gomez lacked standing. I converted that motion into a motion for summary judgment, gave Gomez a chance to present his own evidence, and now GRANT summary judgment to Trinitas. The evidence not subject to genuine disputes of material fact shows that the website does not create a barrier to access that violates the disability laws.

**BACKGROUND**

Gomez is "visually impaired" and legally blind. First Amended Complaint ("FAC") [Dkt. No. 23] ¶ 1. He uses screen-reader software ("SRS") to use computers and mobile devices. *Id.* ¶ 1. Trinitas operates an eponymous winery in Napa County, California. *Id.* ¶¶ 2–3.

In March and August 2021, Gomez visited Trinitas's website "to obtain information about" the winery. *Id.* ¶ 16. He alleges that he is "interested in the process of making wine and has visited numerous wineries in California." *Id.* ¶ 17. He intended to visit family in northern California and "intended to wine taste"; he "identified Trinitas . . . as a location he was interested

in experiencing." *Id.* ¶¶ 22–23. Trinitas's website, Gomez claims, has various features that "relate to [its] physical location." *Id.* ¶ 14. They include the tasting options offered, links to reserve specific experiences, location information, contact information, lists and photos of past events, links to join its email list, images of what is offered, links to make purchases, menus and wine lists, information about the history of the winery, and a blog. *Id.*

According to Gomez, he "encountered numerous accessibility design faults that prevented him from navigating the site successfully using SRS." *Id.* ¶ 25. He identifies three in the FAC. First, he alleges that images lacked a "text equivalent readable by SRS." *Id.* ¶ 25(a). Second, he alleges that certain "script elements" did not have a text equivalent, including "all menu items listed under the link to 'wines'" and those under the "Visit Us" and "Contact Us" links. *Id.* ¶ 25(b). Third, he claims that the contrast between the background and foreground was too low, which prevented him from being able to see certain pieces of text. *Id.* ¶ 25(c). "Because of" these barriers, Gomez asserts, he "decided not to visit" Trinitas. *Id.* ¶ 31. He alleges that he will "return to the Website" once it is accessible. *Id.* ¶ 34.

Gomez filed this suit in November 2021, bringing claims under the ADA and Unruh Act. Dkt. No. 21. In March 2022, I granted Trinitas's motion to dismiss with leave to amend because Gomez's vague pleading about the alleged website issues failed to state a claim or show cognizable injury. *See* Order Granting Motion to Dismiss [Dkt. No. 21]. Gomez filed his FAC and Trinitas again moved to dismiss. Because Trinitas submitted an expert report and information about the website, I gave the parties notice that I was considering converting the motion to dismiss into a motion for summary judgment and gave the parties an opportunity to file supplemental briefs. *See* Dkt. No. 30.

## LEGAL STANDARD

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of

persuasion at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

On summary judgment, the Court draws all reasonable factual inferences in favor of the non-movant. *Id.* at 255. In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* However, conclusory and speculative testimony does not raise genuine issues of fact and is insufficient to defeat summary judgment. *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## DISCUSSION

Trinitas moves to dismiss on the grounds that (1) the website complies with the ADA, (2) Gomez has not shown a concrete injury for purposes of Article III standing, and (3) Gomez failed to show an intent to return for purposes of standing. *See* Motion to Dismiss ("Mot.") [Dkt. No. 23].[1] I will convert that into a motion for summary judgment because Trinitas submitted evidence outside of the pleadings. *See United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008). As noted, I gave Gomez the opportunity to submit supplemental briefing and evidence.

### I. ADA CLAIM

#### A. General Principles

The ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). ADA discrimination "does not extend only to obviously exclusionary conduct—such as a sign stating

---

[1] Citations to briefs use their original page numbers; citations to other filings use their ECF-generated page numbers.

3

that persons with disabilities are unwelcome or an obstacle course leading to a store's entrance." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (en banc). It also prohibits "more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' 'full and equal enjoyment' of places of public accommodation." *Id.* (citations omitted). Certain claims under the Unruh Act, including this one, are coextensive with ADA claims predicated on the same alleged violations. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007).

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff bears the burden of pleading and showing standing. To do so, he or she must demonstrate three elements: (1) an "injury in fact," (2) a "causal connection between the injury and the conduct complained of," and (3) that it is "likely . . . that the injury will be redressed by a favorable decision." *Id.* (internal quotation marks and citations omitted). An injury in fact must be "concrete and particularized" and "actual or imminent," as opposed to "conjectural or hypothetical." *Id.* To show a causal connection, the injury must only be "fairly traceable" to the challenged conduct. *Id.*

To receive injunctive relief under the ADA—the only remedy available—a plaintiff must demonstrate "a sufficient likelihood that he will again be wronged in a similar way." *Chapman*, 631 F.3d at 948 (internal quotation marks and citation omitted). The Ninth Circuit has held there are two ways to meet the requirement. First, the requirement is satisfied when a plaintiff shows that he "intends to return to a noncompliant place of public accommodation where he will likely suffer repeated injury." *Id.* Second, it is satisfied when a plaintiff is "deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there." *Id.* at 949. In other words, an ADA plaintiff can demonstrate standing "either by demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility." *Id.* at 944. And plaintiffs cannot simply point to "bare procedural violation[s], divorced from any concrete harm." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016), *as revised* (May 24, 2016).

4

In *Robles v. Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir. 2019), the Ninth Circuit addressed how to analyze website-based ADA claims by people with visual impairments. In addition to the general prohibition on disability discrimination discussed above, the ADA also makes clear that prohibited discrimination includes "fail[ing] to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." *Robles*, 913 F.3d at 904 (quoting 42 U.S.C § 12182(b)(2)(A)(iii)) (internal quotation marks omitted). Consequently, *Robles* held that "the ADA mandates that places of public accommodation . . . provide auxiliary aids and services to make visual materials available to individuals who are blind." *Id.* at 905. That requirement applies to the websites (and smartphone applications) of public accommodations. *See id.*

Applying these principles, *Robles* explained that the ADA claim there was viable because of a "nexus" between the website and the physical place of accommodation. *See id.* There, for example, "Domino's website and app facilitate access to the goods and services of a place of public accommodation—Domino's physical restaurants." *Id.* The court contrasted this situation with a previous case examining a website that was not connected to a physical location. There, the defendant sold insurance policies online and the court held that no ADA claim could be brought against its website. *See Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1113–14 (9th Cir. 2000).

**B. Application To This Case**

As explained, Gomez challenges three alleged barriers on the website: that (1) images lacked a "text equivalent readable by SRS"; (2) certain "script elements" did not have a text equivalent, including "all menu items listed under the link to 'wines'" and those under the "Visit Us" and "Contact Us" links; and (3) the contrast between the background and foreground was too low, which prevented him from being able to see certain pieces of text. FAC ¶ 25.

In support of its motion, Trinitas submitted expert evidence purporting to show that its website had no ADA violations. In response, Gomez argued that this case was at the pleadings stage so I should disregard that evidence. *See* Opposition to the Mot. ("Oppo.") [Dkt. No. 27] 4.

5

1    Even if I had not converted this into a motion for summary judgment, factual attacks that rely on

2    evidence outside the pleadings are permitted when it comes to motions to dismiss for a lack of

3    subject matter jurisdiction—here, an attack on standing. *See Safe Air Safe Air for Everyone v.*

4    *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In any event, Gomez has now had a full opportunity

5    to come forward with countervailing evidence (or to argue that summary judgment should be

6    delayed under Federal Rule of Civil Procedure 56(d), which he has not done). Summary

7    judgement at this posture is uniquely appropriate since the entire case turns on a publicly

8    accessible website.

9    Because the merits of the ADA claim and whether there is a cognizable injury for standing

10   purposes are so intertwined on these facts—and because the parties raise the same essential issues

11   under both rubrics—I address them together.[2]

### i.     Images

13   I begin with the first category of alleged barrier, the images that lacked a text equivalent.

14   The FAC identifies three types of images that allegedly lacked text equivalents: the Trinitas logo

15   at the top of the website, the website's main menu, and the icons for Trinitas's social media pages.

16   *See id.* ¶ 25(a).

17   Both parties' experts agree that the Trinitas logo at the top of all of the webpages is not

18   readable by SRS (it reads "slash link banner comma landmark"). *See, e.g.*, Ex. 1 to the Silverman

19   Decl. ("Silverman Ex.") [Dkt. No. 33-3] at 13. On these facts, this does not violate the ADA and

20   does not show that there is any concrete injury. To be sure, from the perspective of maximizing

21   the understanding of people with visual impairments in every way possible, it may have been ideal

22   for that banner to be readable, but that does not mean it shows a cognizable injury or violates the

23   ADA. There is no "connection between the [it] and a physical location," so Gomez "does not

24   have an ADA claim" based on it. *Langer v. Pep Boys Manny Moe & Jack of California*, No. 20-

25   CV-06015-DMR, 2021 WL 148237, at *5 (N.D. Cal. Jan. 15, 2021) (applying *Robles*). Gomez

26   never explains how this could deny him full use or equal enjoyment or deter him from visiting

---

[2] Trinitas makes an additional argument about standing: that Gomez is not credible in his desire to return. Because I dismiss the case on other grounds, there is no need to reach that issue.

United States District Court
Northern District of California

again. In fact, neither his opposition brief nor his supplemental brief address it at all. In addition to being legally insufficient, basing this sort of claim on this particular website banner makes little sense: This website banner just states the name of the business.

Next, both parties' experts agree that the social media logos that appear at the bottom of pages are not properly readable by SRS (they read as "trinitascellars link"). *See, e.g.*, Silverman Ex. at 10. But again, neither Gomez's opposition nor his supplemental brief draws even an arguable connection between this lack of readability and a barrier that would matter to the ADA or show a cognizable injury. On these facts, whether Gomez could or could not know that there was a link on the website to social media pages matters nothing whatever to his ability fully access Trinitas's location and complete range of services.

Third and finally is the website's main menu. Unlike the two issues just discussed, if Gomez were correct that the main menu were not accessible by SRS, that would indeed seem to be a cognizable violation under *Robles* because it would potentially render the website unnavigable. But evidence not subject to genuine disputes of material fact shows that the menu *is* fully accessible. Trinitas's expert has submitted a declaration stating that the menu is accessible via SRS and has made a video demonstrating this use. *See* Declaration of Craig Davis ("Davis Decl.") [Dkt. No. 23-2] ¶ 10.[3] The SRS adequately processes and reads aloud each part of the menu. *See id.* Neither of Gomez's briefs (both filed after this evidence was submitted) attempts to rebut this. While that could end the analysis on its own, I note that Gomez's expert offers no opinions on the menu.

Accordingly, none of the images not readable by SRS alleged in the FAC is sufficient to show a cognizable injury or to state a claim.

### ii. Script Elements

The second major category of inaccessible aspects of the website alleged in the FAC are

---

[3] The video is accessible at https://www.youtube.com/watch?v=07YDXZ0Oekk. Trinitas requests that I take judicial notice of it. I GRANT the unopposed request, but note that even if I did not, it would still be a proper part of the record because it is an authenticated exhibit submitted by an expert.

7

script elements "not identified with functional text readable by SRS."  FAC ¶ 25(b).  Gomez specifically identifies (1) "links to the Wine Society"; (2) menu items listed under the link to "Wines"; (3) menu items listed under the link to "Visit Us"; and (4) menu items listed under the link to "Contact Us."  *Id.*

The evidence not subject to genuine disputes of material fact shows that Gomez's allegations are factually incorrect: all of these are readable by SRS.  Again, Trinitas's expert's declaration and video demonstration illustrate this.  *See* Davis. Decl. ¶ 10.  And again, Gomez's opposition, supplemental brief, and expert report abandon any defense of these allegations and do not attempt to show otherwise.  In fact, Gomez's expert highlights several of these items with the same notation as he uses for violations but then states that "[n]o accessibility violations" existed with respect to them.  *See, e.g.*, Silverman Ex. at 75.

### iii. Low Contrast

The third and last barrier identified in the FAC is that the webpage had "impermissibly low contrast."  FAC ¶ 25(c).  The uncontradicted evidence shows that this purported lack of contrast does not amount to an ADA violation or cognizable injury on these facts.  Trinitas's accessibility expert explains that the contrast (or lack thereof) of a webpage is irrelevant to an SRS because it reads *text*, regardless of the color of the text or color of the background against which the text is set.  *See* Davis Decl. ¶ 12.  That accords not only with common sense but also with the video evidence that Davis submitted showing the SRS reading text on the website no matter its color.  Indeed, *Gomez's* expert in this case testified in another case on behalf of Gomez that this was so.  *See* Dkt. No. 28-1 at 13–14.[4]  To use the example he testified to in that case, an SRS would be able to read white text on white background that appeared to a human eye as pure white.  *See id.*  Accordingly, the evidence shows that a lack of contrast is not a barrier to an SRS reading the text on a webpage.

Gomez does not dispute this.  Instead, he advances a different theory for why a lack of contrast might amount to an actionable barrier.  His opposition argued briefly that because Gomez

---

[4] Trinitas's unopposed request for judicial notice of this testimony is GRANTED.

8

is not *completely* blind, he uses his sight to "click around" the screen then uses the SRS to read the text. *See* Oppo. 5–6. This is unsupported attorney argument, so it could not affect summary judgment. And, somewhat oddly, Gomez submitted a declaration as part of the supplemental briefing opportunity I gave him, but it does not back up these assertions. Dkt. No. 33-2. And even if I were to credit these assertions as coming from Gomez himself, they would not change the outcome. The uncontroverted video evidence submitted by Trinitas shows how an SRS reader works: it can move from text item to text item on the webpage and read the entire page. It does not require the user to click each individual element (which would defeat the whole purpose). So, if Gomez were to employ an SRS, he would be able to have the entire page read to him, regardless of the contrast. There is no reason—and Gomez has presented no authority for the view—that a fully accessible website should count as *less* accessible just because the user can see *more* (but not all) of it than a person who cannot see at all.[5]

## II.   UNRUH ACT CLAIM

Gomez does not dispute that, if the ADA claim is foreclosed on the grounds identified, the Unruh Act claim here is as well. *See Molski*, 481 F.3d at 731. Accordingly, summary judgment will be entered on that claim too.[6]

---

[5] The FAC alleged the three types of barriers discussed. Gomez's supplemental expert report purported to identify numerous violations, but many are just iterations of those alleged barriers on different webpages. Some of them, however, are alleged barriers that were never pleaded or even discussed in Gomez's brief, so they cannot preclude summary judgment. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record."); *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ("It is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nomnoving party to identify with reasonable particularity the evidence that precludes summary judgment.") (internal quotation marks and alteration omitted). It would be improper to consider them in any event. *See, e.g.*, *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) (holding that parties cannot introduce new theories to survive summary judgment that were not alleged in the complaint).

[6] In one line in his briefing, Gomez suggests that the website changed from when he visited it a year ago and was allegedly deterred. *See* Dkt. No. 33 at 2 (arguing that his expert found "fewer" alleged violations than he "originally encountered"). He makes no developed argument about any reason this would prevent summary judgment on the grounds I have identified, so I do not address that issue. *Cf. United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (discussing the party presentation principle).

**CONCLUSION**

The motion for summary judgment is GRANTED.  Judgment will be entered accordingly. Gomez shall bear the costs for this suit.  *See* Fed. R. Civ. P. 54(d)(1).

**IT IS SO ORDERED.**

Dated: June 17, 2022



William H. Orrick
United States District Judge